Case No. 22-16490

# THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARIZONA ALLIANCE FOR RETIRED AMERICANS, et al.,

*Plaintiffs-Appellees,*

v.

KRISTIN K. MAYES, Attorney General,
in her official capacity as Attorney General of the State of Arizona;

*Defendant-Appellant,*

and

YUMA COUNTY REPUBLICAN COMMITTEE,

*Intervenor-Defendant-Appellant,*

and

ADRIAN FONTES, in his official capacity as Arizona Secretary of State, et al.,

*Defendants.*

On Appeal from D.C. No. 2:22-cv-01374-GMS
U.S. District Court for Arizona, Phoenix

**ATTORNEY GENERAL'S SECOND SUPPLEMENTAL BRIEF**

KRISTIN K. MAYES
ATTORNEY GENERAL

Joshua M. Whitaker*
*Assistant Attorney General*
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-3333
Joshua.Whitaker@azag.gov

*Counsel of Record

*Counsel for the Attorney General*

Dated: June 27, 2024

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................3

SUMMARY OF ARGUMENT ...............................................................................5

ARGUMENT ...........................................................................................................6

I. Before now, Ninth Circuit cases construed *Havens* broadly, creating tension with Article III principles. ................................................................................6

II. After *Alliance for Hippocratic Medicine*, the Ninth Circuit should construe *Havens* more narrowly..................................................................................12

III. In light of *Alliance for Hippocratic Medicine*, Plaintiffs have not shown organizational standing. ...............................................................................15

CONCLUSION ......................................................................................................17

CERTIFICATE OF SERVICE ...............................................................................19

CERTIFICATE OF COMPLIANCE .....................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ..................................................................................9

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) .....................................................................11

*El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev.*, 959 F.2d 742 (9th Cir.
  1991) ...........................................................................................................7

*Fair Elections Ohio v. Husted*,
  770 F.3d 456 (6th Cir. 2014) .....................................................................17

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*,
  666 F.3d 1216 (9th Cir. 2012) ...................................................................11

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
  82 F.4th 664 (9th Cir. 2023) ...................................................................5, 8

*Food and Drug Administration v. Alliance for Hippocratic Medicine*,
  No. 23-235 (S. Ct. June 13, 2024) ...................................................... passim

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) .......................................................................... passim

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) .................................................................5, 14

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*,
  797 F.3d 1087 (D.C. Cir. 2015) ...............................................................9, 11

*Rodriguez v. City of San Jose*,
  930 F.3d 1123 (9th Cir. 2019) ...................................................................11

*Sierra Club v. Morton*,
  405 U.S. 727 (1972) ....................................................................................8

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
  454 U.S. 464 (1982) ..................................................................................8

**Statutes and Other Authorities**

A.R.S. § 16-165..........................................................................................16

Ryan Baasch, *Reorganizing Organizational Standing*, 103 Va. L. Rev. Online 18
  (2017)................................................................................................9, 11

## SUMMARY OF ARGUMENT

This Court directed the parties to file supplemental briefs addressing the impact of the Supreme Court's decision in *Food and Drug Administration v. Alliance for Hippocratic Medicine*, No. 23-235 (S. Ct. June 13, 2024), on organizational standing—in particular, how the decision affects Ninth Circuit case law construing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

*Alliance for Hippocratic Medicine* shows that *Havens* is narrower than how prior Ninth Circuit cases construed it. Because the Supreme Court has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable," prior Ninth Circuit cases broadly construing *Havens* no longer control. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

Before now, Ninth Circuit cases broadly construed *Havens* as permitting an organization to challenge conduct that (1) "frustrated its mission" and (2) "caused it to divert resources in response to that frustration of purpose." *E.g.*, *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 682 (9th Cir. 2023) (en banc) (citation omitted). But now, the Supreme Court has clarified that *Havens* merely permitted an organization to challenge conduct that "directly affected and interfered with [its] core business activities," akin to "a retailer who sues a manufacturer for selling defective goods to the retailer." *Alliance for*

5

*Hippocratic Medicine*, slip op. at 23.  The Supreme Court also described *Havens* as "an unusual case" and noted that it "has been careful not to extend the *Havens* holding beyond its context." *Id.*

In light of *Alliance for Hippocratic Medicine*, Plaintiffs here did not make a clear showing (as required for a preliminary injunction) of organizational standing. They did not show that the statutory provisions at issue directly affected and interfered with their core business activities or otherwise caused them injury. Moreover, permitting Plaintiffs to sue to enjoin a law before the law took effect would extend the *Havens* holding beyond its context.

## ARGUMENT

Before now, Ninth Circuit cases construed *Havens* broadly, creating tension with Article III principles.  Arg. § I below.  After *Alliance for Hippocratic Medicine*, the Ninth Circuit should construe *Havens* more narrowly.  Arg. § II below.  In light of *Alliance for Hippocratic Medicine*, Plaintiffs have not shown organizational standing.  Arg. § III below.

**I.  Before now, Ninth Circuit cases construed *Havens* broadly, creating tension with Article III principles.**

In *Havens*, an organization that provided housing counseling to home seekers sought damages against an apartment owner that had given false information about apartment availability to black people, including one of the organization's own employees.  455 U.S. at 366–69, 378–79; *see also Alliance for Hippocratic*

*Medicine*, slip op. at 22–23 (summarizing facts in *Havens*). The organization alleged that the apartment owner's misinformation had "frustrated" its "efforts to assist equal access to housing through counseling and other referral services," and that the organization "had to devote significant resources to identify and counteract" the misinformation. 455 U.S. at 379 (citation omitted).

The Supreme Court reasoned that, accepting the organization's allegations as true, the apartment owner had "perceptibly impaired [the organization's] ability to provide counseling and referral services" for home seekers. *Id.* The Supreme Court deemed this impairment a "concrete and demonstrable injury to the organization's activities," with a "consequent drain on the organization's resources," so the organization had adequately alleged injury. *Id.*

Nine years later, a Ninth Circuit panel concluded that organizations that assisted refugees in obtaining asylum had standing to challenge an immigration court policy, because the policy (1) "frustrates [the organization's] goals" and (2) "requires the organizations to expend resources in representing clients they otherwise would spend in other ways." *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev.*, 959 F.2d 742, 748 (9th Cir. 1991). Variations of this two-element test became common in Ninth Circuit cases. For example, a recent en banc opinion stated: "[A]n organization has direct standing to sue where it establishes that the defendant's behavior [1] has frustrated its mission and [2] has caused it to divert

7

resources in response to that frustration of purpose." *Fellowship of Christian Athletes*, 82 F.4th at 682 (first alteration in original) (citation omitted).

This two-element test, at least as applied in some cases, creates tension with basic Article III standing principles. One basic standing principle is that a plaintiff's injury must be concrete, not abstract. A plaintiff's moral, social, or policy objection to a defendant's action does not confer standing. *See, e.g.*, *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482–87 (1982) (discussing standing for individuals); *Sierra Club v. Morton*, 405 U.S. 727, 734–41 (1972) (discussing standing for organizations).

This principle can be evaded if injury turns on whether an organization's *mission* (or alternatively, its *goal*) has been frustrated. For example, a city resident with a mere policy objection to city actions that exacerbate homelessness lacks standing to sue the city. But if the resident forms an organization whose mission is to reduce homelessness, those same city actions may be said to frustrate that mission. This end run around standing is made possible by use of imprecise terms—frustration of "mission" or "goal"—to describe organizational injury, even though such terms do not suffice for individual injury. In other words, frustration of an *individual's* mission or goal does not confer standing, so making it an element of *organizational* standing ignores that the inquiry for organizational standing should be "the same inquiry as in the case of an individual." *Havens*, 455 U.S. at 378–79.

8

Tellingly, the Supreme Court in *Havens* never analyzed whether the organizational plaintiff's "mission" or "goal" was frustrated. Neither word appears in the opinion. This is because the organizational plaintiff in *Havens* experienced more than a frustrated mission or goal. The organizational plaintiff suffered a "direct, concrete, and immediate injury" because it was given "discriminatory misinformation" that "directly frustrated and unraveled its efforts to match individuals with available housing." *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1100 (D.C. Cir. 2015) (Millett, J., dubitante) (describing *Havens*).[1]

Another basic standing principle is that a plaintiff's injury cannot be voluntarily self-inflicted. In other words, the injury must be caused by the defendant's action, not the plaintiff's free choice. The Supreme Court has held, for instance, that individuals who "incurred certain costs as a reasonable reaction to a risk of harm," where the feared harm was "not certainly impending," lacked standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).

This principle, too, can be evaded if injury turns on whether an organization spends resources *in response* to a defendant's action. Returning to the previous example: A city resident with a mere policy objection to city actions that exacerbate

---

[1] Similarly, at least one author argues that analyzing whether an organization's mission has been frustrated misunderstands *Havens*. *See* Ryan Baasch, *Reorganizing Organizational Standing*, 103 Va. L. Rev. Online 18, 23–27 (2017).

homelessness lacks standing to sue the city, even if she spends money to raise public awareness of the city actions. But if the resident forms an organization whose mission is to reduce homelessness, and if the organization spends money to raise public awareness of the city actions, those expenditures may be said to be *in response* to the city actions. Here, too, the problem arises from use of imprecise terms to describe organizational injury when such terms would not suffice for individual injury, again ignoring that the inquiry for organizational standing should be "the same inquiry as in the case of an individual." *Havens*, 455 U.S. at 378–79.

Notably, the Supreme Court in *Havens* did not focus on whether the organizational plaintiff spent resources *in response* to the defendant's action. This is because the organizational plaintiff in *Havens* had already spent resources on something—namely, housing counseling services—that the defendant's actions thwarted. Again, to summarize what happened in *Havens*: "The [defendant's] violations unraveled again and again the work and resources that [the organizational plaintiff] had put into providing housing and equal housing opportunities for its clients. Put simply, what [the organizational plaintiff] used its own resources, information, and client base to build up, [the defendant's] racist lies tore down."

*People for the Ethical Treatment of Animals*, 797 F.3d at 1100 (Millett, J., dubitante) (describing *Havens*).[2]

For these and other reasons, Ninth Circuit judges have questioned whether Ninth Circuit case law construing *Havens* comports with Article III. To name a few examples (in chronological order):

- *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1224 (9th Cir. 2012) (Ikuta, J., concurring and dissenting) ("I write separately, however, to express my concern that our circuit's test for organizational standing cannot be reconciled with Supreme Court precedent.").

- *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1135 n.10 (9th Cir. 2019) (panel opinion by Friedland, J., joined by Wallace and Clifton, JJ.) ("We share many of these concerns but are bound to apply current precedent regardless.").

- *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 694 (9th Cir. 2021) (Bumatay, J., dissenting from denial of rehearing en banc and joined by Ikuta, Bennett, R. Nelson, Lee, and VanDyke, JJ.) ("We should have fixed this problem by reviewing this case en banc and articulating a clear organizational standing doctrine

---

[2] Similarly, at least one author argues that focusing on whether an organization has spent resources in response to a defendant's action misunderstands *Havens*. *See* Baasch, *supra* note 1, at 27–32.

11

grounded in Article III and the standing principles respected by our courts since the Founding.").

## II. After *Alliance for Hippocratic Medicine*, the Ninth Circuit should construe *Havens* more narrowly.

In *Alliance for Hippocratic Medicine*, the Supreme Court reaffirmed basic principles of Article III standing. A plaintiff must show injury that is "concrete," "particularized," and "actual or imminent." Slip op. at 8 (citation omitted). This requirement "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *Id.* at 8–9.

In addition, a plaintiff must show that the injury "likely was caused or likely will be caused by the defendant's conduct." *Id.* at 9. For example, when a plaintiff challenges a government regulation that "require[s] or forbid[s] some action by the plaintiff," causation is "usually easy to establish." *Id.* In contrast, when a plaintiff challenges a government regulation "of *someone else*," causation is "ordinarily substantially more difficult to establish." *Id.* at 10 (citation omitted). In such cases, the plaintiff "must show a predictable chain of events leading from the government action to the asserted injury." *Id.* at 12.

Importantly, the Supreme Court reaffirmed that organizational standing under *Havens* "must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Id.* at 21. The Supreme Court then analyzed whether the challengers (pro-life medical associations) had organizational standing.

12

*Id.* at 21–24. Although the challengers invoked an analytical framework similar to the Ninth Circuit's two-element test, the Supreme Court rejected that framework.

Invoking the first element, the challengers argued that the government action at issue "impaired" their "ability to provide services and achieve their organizational missions." *Id.* at 21 (citation omitted). The Supreme Court categorically rejected that argument: "That argument ***does not work*** to demonstrate standing." *Id.* (emphasis added). The Supreme Court did not agree that frustration of an organization's mission or goal is an element of organizational standing.

Invoking the second element, the challengers argued that the government action at issue "caused" them to "conduct their own studies" to "better inform their members and the public," as well as to "expend considerable time, energy, and resources" on "engaging in public advocacy and public education." *Id.* at 22 (citations omitted). This argument relied on the challengers' view that, under *Havens*, "standing exists when an organization diverts its resources in response to a defendant's actions." *Id.* The Supreme Court flatly rejected this reading of *Havens*: "That ***is incorrect***." *Id.* (emphasis added). The Supreme Court did not agree that an organization's expenditure of resources in response to a defendant's action is an element of organizational standing.

The Supreme Court then explained its own understanding of organizational standing permitted under *Havens*, in a way that confirms the Ninth Circuit's two-element test is too inclusive. Here is the full explanation:

> The relevant question in *Havens* was whether a housing counseling organization, HOME, had standing to bring a claim under the Fair Housing Act against Havens Realty, which owned and operated apartment complexes. *Id.*, at 368, 378. Havens had provided HOME's black employees false information about apartment availability—a practice known as racial steering. *Id.*, at 366, and n. 1, 368. Critically, HOME not only was an issue-advocacy organization, but also operated a housing counseling service. *Id.*, at 368. And when Havens gave HOME's employees false information about apartment availability, HOME sued Havens because Havens "perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers." *Id.*, at 379. In other words, ***Havens's actions directly affected and interfered with HOME's core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer***.

*Id.* at 22–23 (emphasis added). The Supreme Court further clarified that "*Havens* was an unusual case, and this Court has been ***careful not to extend the Havens holding beyond its context***." *Id.* at 23 (emphasis added).

To summarize: The Supreme Court's method of analyzing organizational standing in *Alliance for Hippocratic Medicine* is "clearly irreconcilable," *Miller*, 335 F.3d at 900, with Ninth Circuit cases broadly construing *Havens*, in three ways.

*First*, whether a defendant's action has frustrated an organizational plaintiff's mission or goal is not the right inquiry. A better inquiry is whether the defendant's action has "directly affected and interfered with" the organizational plaintiff's "core

14

business activities," akin to a manufacturer who sells defective goods to a retailer. *Alliance for Hippocratic Medicine*, slip op. at 23.

*Second*, whether an organizational plaintiff has spent resources in response to a defendant's action is not the right inquiry either. A better inquiry is to consult basic causation principles. For example, when (as here) an organizational plaintiff challenges government regulation, causation is "usually easy to establish" if the regulation "require[s] or forbid[s] some action by the plaintiff," but is "ordinarily substantially more difficult to establish" if the government is regulating "*someone else*." *Id.* at 9–10 (citation omitted).

*Third*, federal courts should be "careful not to extend the *Havens* holding beyond its context." *Id.* at 23. This cautious approach reflects the "unusual" nature of *Havens*. *Id.*

### III. In light of *Alliance for Hippocratic Medicine*, Plaintiffs have not shown organizational standing.

The Attorney General's previous supplemental brief explained that Plaintiffs failed to make a clear showing (as required for a preliminary injunction) of organizational standing. This conclusion is even clearer after *Alliance for Hippocratic Medicine*.

*First*, Plaintiffs failed to show that the statutory provisions at issue "directly affected and interfered with" their "core business activities." *Alliance for Hippocratic Medicine*, slip op. at 23. To the extent Plaintiffs have core business

15

activities,[3] these activities relate to helping individuals register to vote. *See, e.g.*, 2-ER-247–48 ¶¶ 5–11 (describing how Arizona Alliance accomplishes mission); 2-ER-254–55 ¶¶ 4–8 (describing how Voto Latino accomplishes mission); 2-ER-261–62 ¶¶ 4–5 (describing how Priorities USA accomplishes mission).

The statutory provisions at issue do not directly affect, much less interfere with, Plaintiffs' efforts to help individuals register to vote. The Felony Provision does not apply to registration forms at all, as explained in the Attorney General's previous supplemental brief. The Cancellation Provision, while it relates to voter registration, does not directly apply to Plaintiffs; rather, it applies to county recorders who may in turn take action regarding registrants. A.R.S. § 16-165(A)(11), (B). To the extent Plaintiffs believe they should explain the Cancellation Provision to their employees or to people they help register, the Supreme Court has confirmed that resources spent on "public education" do not confer standing. *Alliance for Hippocratic Medicine*, slip op. at 22. To the extent Plaintiffs choose, in light of the Cancellation Provision, to change some aspect of their process for helping

---

[3] Plaintiffs' descriptions of their missions suggest that they are largely advocacy organizations. *See* 2-ER-246 ¶ 4 (describing Arizona Alliance's mission); 2-ER-254 ¶ 3 (describing Voto Latino's mission); 2-ER-261 ¶ 3 (describing Priorities USA's mission). The organizational plaintiff in *Havens*, however, "not only was an issue-advocacy organization, but also operated a housing counseling service." *Alliance for Hippocratic Medicine*, slip op. at 23.

16

individuals register, they have not shown that such a change would *interfere* with their core business activities.

*Second*, Plaintiffs failed to show "causation" between the statutory provisions at issue and any injury. *Id.* at 9. Because the statutory provisions at issue do not regulate Plaintiffs, causation is "substantially more difficult to establish" and requires "a predictable chain of events leading from the government action to the asserted injury." *Id.* at 10, 12 (citation omitted). Nothing accompanying Plaintiffs' motion for a preliminary injunction made that showing. To the extent Plaintiffs may choose to change their own behavior in light of the statutory provisions, that change is voluntary, not legally required.

*Third*, allowing Plaintiffs to enjoin the statutory provisions here would extend the *Havens* holding beyond its context. The organizational plaintiff in *Havens* sought damages for an injury it had already suffered. 455 U.S. at 378–79. Here, Plaintiffs sued to enjoin statutory provisions before they even took effect. This is a far cry from the facts that supported standing in *Havens*. *See, e.g.*, *Fair Elections Ohio v. Husted*, 770 F.3d 456, 460 n.1 (6th Cir. 2014) (distinguishing *Havens* because "in *Havens*, the plaintiff organization sought damages, not an injunction").

## CONCLUSION

In light of *Alliance for Hippocratic Medicine*, Plaintiffs failed to make a clear showing of organizational standing.

Respectfully submitted this 27th day of June, 2024.

>KRISTIN K. MAYES
>  ARIZONA ATTORNEY GENERAL
>
>s/ Joshua M. Whitaker
>Joshua M. Whitaker
>*Assistant Attorney General*
>2005 N. Central Ave.
>Phoenix, AZ 85004
>(602) 542-3333
>Joshua.Whitaker@azag.gov
>
>*Counsel for Arizona Attorney General Kristin K. Mayes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I presented the above and foregoing for filing and uploading to the CM/ECF system which will send electronic notification of such filing to all counsel of record.

Dated this 27th day of June, 2024.

                                                                      s/ Joshua M. Whitaker

# CERTIFICATE OF COMPLIANCE

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s):** 22-16490

I am the attorney or self-represented party.

**This brief contains 2,969 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[X] complies with the length limit designated by court order dated June 13, 2024.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** s/ Joshua M. Whitaker          **Date:** June 27, 2024