No. 22-16490

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ARIZONA ALLIANCE FOR RETIRED AMERICANS et al.,
Plaintiffs-Appellees,

*v.*

KRISTIN K. MAYES, in her official capacity as Arizona Attorney
General,
Defendant-Appellant,
*and*
YUMA COUNTY REPUBLICAN COMMITTEE,
Intervenor-Defendant-Appellant,
*and*
ADRIAN FONTES, in his official capacity as Arizona Secretary of
State, et al.,
Defendants.

On Appeal from the United States District Court
for the District of Arizona
Case No. 2:22-cv-01374-GMS

## BRIEF OF AMICI CURIAE COMMUNITY GROUPS, FAIR HOUSING AGENCIES, AND PUBLIC INTEREST ORGANIZATIONS IN SUPPORT OF PETITION FOR REHEARING EN BANC

Lila Miller
Reed Colfax
Tara Ramchandani
RELMAN COLFAX PLLC
1225 19th Street NW Suite 600
Washington, DC 20036
Tel: 202-728-1888
Fax: 202-728-0848
lmiller@relmanlaw.com
rcolfax@relmanlaw.com
tramchandani@relmanlaw.com
*Attorneys for Amici Curiae*

Dated: October 15, 2024

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(c), Amici Curiae Community Groups, Fair Housing Agencies, and Public Interest Organizations (collectively "Amici") state that they all are non-profit corporations; that none of Amici has any parent corporations; and that no publicly held company owns any stock in any of Amici.

<u>s/Lila Miller</u>
Lila Miller
*Attorney for Amici Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT.................................. i

TABLE OF CONTENTS ..................................................... ii

TABLE OF AUTHORITIES ................................................ iii

INTEREST OF AMICI CURIAE ............................................1

SUMMARY OF ARGUMENT ..............................................3

ARGUMENT .................................................................4

  I.   The Majority's Decision Fundamentally Misunderstands Binding Supreme Court Precedent...........................................4

    A.  The Supreme Court Has Identified at Least Three Forms of Organizational Injury. ...........................................5

    B.  The Majority's Decision Misreads *FDA* and Materially Narrows Injury-in-Fact for Organizational Plaintiffs. ...............8

    C.  The Majority's Error Will Deprive Amici of Redress for Cognizable Harm. ...................................................11

  II.   The Majority Wrongly Attempts to Overrule Circuit Precedent. .......13

CONCLUSION..............................................................15

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Civil Rights Educ. and Enforcement Ctr. v. Hospitality Props. Trust*,
  867 F.3d 1093 (9th Cir. 2017) ...............................................14

*East Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640, 663–65 (9th Cir. 2021) .............................................14

*Food & Drug Admin. v. Alliance for Hippocratic Medicine*,
  602 U.S. 367 (2024)..............................................................3, 7, 8, 10

*Havens Realty v. Coleman*,
  455 U.S. 363 (1982)...................................................................3, 6, 7

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
  624 F.3d 1083 (9th Cir. 2010) ...........................................14

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) ...........................................13

**Statutes**

Fair Housing Act, 42 U.S.C. § 3604. ........................................................7

# INTEREST OF AMICI CURIAE[1]

Amici include 18 Community Groups, Fair Housing Agencies, and Public Interest Organizations that are active in the states within this Circuit. Each of Amici has both a demonstrated commitment to a specific mission or purpose and a track record of undertaking mission-driven activities. Some of Amici provide direct services to individuals and families, helping them obtain access to housing and public benefits. Other of Amici work in their communities to provide housing counseling, promote homeownership, undertake neighborhood stabilization projects, and engage in education and outreach. Certain Amici have experience with the legal standards for establishing organizational standing, having served as legal counsel to organizations who have been compelled to prevent or remedy discrimination, or violation of other laws, that impairs their missions. All Amici are susceptible to harm, whether it be from private conduct that impairs their programs, from a government regulation that makes it impossible to achieve their missions, or from some other direct harm, such as a misrepresentation or loss of funding. These injuries are often concrete and particularized, yet under the

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E) and Ninth Circuit Rules 29-2 and 29-3, Amici state that all parties consented to the filing of this amici curiae brief. No party's counsel authored this brief in whole or in part, and no party, party's counsel, or person other than Amici, their members, or their counsel contributed money intended to finance the preparation or submission of this brief.

majority's decision in this case, many would be precluded from redress. Because the majority's approach to Article III injury-in-fact will wrongly subject Amici to ongoing harm, Amici have an interest in the outcome of this case.

Amici include:

- Asian Americans Advancing Justice Southern California
- Disability Rights Advocates
- Disability Rights California
- Disability Rights Education & Defense Fund
- Fair Housing Advocates of Northern California
- Fair Housing Center of Washington
- Fair Housing Council of Orange County
- Greater Napa Fair Housing Center
- Housing Rights Center
- Inland Fair Housing and Mediation Board
- Intermountain Fair Housing
- Montana Fair Housing, Inc.
- Northwest Fair Housing Alliance
- Project Sentinel
- Public Advocates
- Public Counsel
- Southwest Fair Housing Council
- Western Center on Law & Poverty

## SUMMARY OF ARGUMENT

This Court should rehear the divided panel's erroneous determination that the Arizona Alliance for Retired Americans, Voto Latino, and Priorities USA (collectively "Plaintiffs") lack Article III standing.[2]

The majority reached this conclusion by holding that an organizational plaintiff has an injury-in-fact "*only*" when the challenged conduct "directly injures the organization's preexisting core activities and does so *apart* from the plaintiffs' response to that governmental action." Op. at 7 (emphasis in original).[3] This holding improperly narrows organizational standing. More specifically, the majority's restrictive approach departs from *Havens Realty v. Coleman*, 455 U.S. 363 (1982), and misconstrues the recent unanimous decision in *Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ("*FDA*").

If the majority's opinion remains intact, it will have severe consequences for organizations like Amici, which are vulnerable to a variety of harms at the hands of governmental action and private conduct. Unlike other litigants, Amici would be

---

[2] Amici take no position regarding whether Arizona Senate Bill 1260, Ariz. H.B. Summary, 2022 Reg. Sess. S.B. 1260, violates the National Voter Registration Act, 52 U.S.C. § 20507.

[3] Citations to "Op." refer to pages 1 through 39 of the panel's majority opinion issued on September 20, 2024.

uniquely barred from redressing concrete and particularized injuries merely because they do not fit within the majority's cramped definition of organizational harm.

The majority also purports to overrule all prior Circuit precedent on organizational standing, yet many of this Court's previous decisions are wholly consistent with *Havens* and *FDA* and therefore remain good law.

Amici respectfully request that the Court grant en banc review to correct the erroneous standard the majority applied in deciding whether Plaintiffs established organizational standing.

## ARGUMENT

## I. The Majority's Decision Fundamentally Misunderstands Binding Supreme Court Precedent.

As this Court has long held, an organization seeking to establish Article III standing must show the familiar trio of injury, causation, and redressability. *See Infra* Section III. At issue here is the first prong, namely, how the panel majority evaluated whether Plaintiffs suffered an injury-in-fact for standing purposes. The panel majority held that an organization is injured for Article III purposes *only* when a defendant's actions "directly harmed already-existing core activities." Op. at 23. Amici agree that harm to an organization's existing activities is an injury sufficient for the first prong of the standing analysis, but it is not the sole type of organizational injury cognizable under Article III. The Supreme Court has

recognized at least two other categories of injury—impairment of mission and direct misrepresentations—which the majority has summarily eliminated, along with all other potential injuries. In addition to eliminating cognizable injuries, the majority has wrongly imposed a temporal limitation—requiring that the harmed organizational activities be "preexisting"—that finds no home in the applicable Supreme Court precedent. The majority has thus improperly and artificially narrowed what organizational injuries may be redressed through the courts. The Supreme Court did not narrow or eliminate any of these injuries in *FDA*, and the majority had no basis for doing so in this case. If left intact, the majority's interpretation would deprive Amici of recourse—and thus subject them to ongoing harm—when they face traceable and redressable injuries.

## A. The Supreme Court Has Identified at Least Three Forms of Organizational Injury.

The Supreme Court's decisions in *Havens* and *FDA* teach what kinds of organizational harm are cognizable for Article III purposes. *Havens* involved claims by HOME of Virginia, a fair housing non-profit, against a housing provider that steered Black individuals (including testers sent by the non-profit) away from an apartment complex by lying about unit availability. In affirming HOME's standing to sue, the Supreme Court described three distinct cognizable forms of injury to the organization.

First, *Havens* held that interference with an organization's programs and services caused an injury-in-fact for Article III purposes. *Havens*, 455 U.S. at 379. Specifically, the defendant's racial steering impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers. *Id.*

Second, the Supreme Court recognized injury-in-fact in the form of "impairment" of the organization's "role of facilitating open housing." *Id.* at 379 n.21. The Court clarified that the fact "[t]hat the alleged injury results from the organization's non-economic interest in encouraging open housing does not affect the nature of the injury . . . and accordingly does not deprive the organization of standing." *Id.* at n.20. And practically speaking, this holding makes sense—during discovery, HOME could have developed evidence that the defendant's racial steering perpetuated segregation and impeded equal access to housing, both of which would have significantly interfered with the organization's mission of promoting equal housing opportunity. The Supreme Court specifically noted that HOME would need to prove this injury at "trial . . . before it [would] be entitled to judicial relief." *Id.* at n.21.

Third, the *Havens* court recognized harm to HOME from the "false information about apartment availability" that the defendant provided to the

organization's employee, noting that race-based misrepresentations regarding housing availability violate the Fair Housing Act, 42 U.S.C. § 3604. *Id.* at 373.[4]

The Supreme Court's recent decision in *FDA* did not disavow or narrow the injuries recognized in *Havens*; such injuries simply were not supported by the record. There, the plaintiff-organizations did not show any of the injuries articulated in *Havens*, nor any other kind of harm, and thus did not have standing. *FDA*, 602 U.S. at 394–95. The only injury asserted by the *FDA* plaintiffs, apart from "mere disagreement with [the] FDA's policies," was the cost incurred to express that disagreement. *Id.* at 394. The Supreme Court found that these expenditures alone did not confer standing. *Id.* (an organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action").

Although the *FDA* opinion confirmed that harm to an organization's activities constitutes an injury-in-fact, it did not contain any requirement that such activities be "preexisting." *Id.* at 394–95. As to other kinds of harm at issue in *Havens*, the *FDA* opinion did not cite or analyze HOME's impairment-of-mission injury—and the outcome would not have been different even if it had. The medical associations did not show or allege how their missions—"support[ing] women's

---

[4] Although not addressed by the majority, such direct harm can presumably arise in the context of other kinds of claims, such as reputational damage in a defamation case or restraint on speech in a First Amendment case.

health and educat[ing] the public, their members, and their members' patients about the potential risks of abortion drugs," Brief of Respondents-Appellees at 43, *FDA*, Nos. 23-235, 23-236 (Feb. 22, 2024)—were impaired by the relaxation of certain regulatory requirements of mifepristone. Moreover, *FDA* expressly declined to address direct harm like the misrepresentations at issue in *Havens* because the medical associations neither argued that they suffered discriminatory misrepresentations nor suggested that the FDA was required to disseminate specific information to them or their members. *FDA*, 602 U.S. at 395–96.

Notably, neither *Havens* nor *FDA* contains any language that can be read to cap the universe of potential organizational injuries. Rather, *Havens* and *FDA* together instruct that there exist at least three kinds of organizational injury that can support standing, but abstract disagreement and bare expenditures to oppose the challenged conduct are not among them.

## B. The Majority's Decision Misreads *FDA* and Materially Narrows Injury-in-Fact for Organizational Plaintiffs.

Despite the above-described binding precedent, the panel majority here wrongly held that an organization does not have an Article III injury-in-fact unless the challenged conduct "directly harms its *already-existing* core activities." Op. at 23 (emphasis in original). This narrow articulation eliminates *all* other potential injuries, including those already recognized by the Supreme Court in *Havens*. Now, an organization that pleads mission impairment or direct harm (like the

misrepresentations in *Havens*) will not have standing absent allegations of injury to its ongoing core activities.

The majority thus created a heightened standard for organizational plaintiffs, both compared to the Supreme Court (where *Havens* and *FDA* control) and compared to other kinds of litigants (who can seek redress for *any* injury so long as it is concrete, particularized, and actual or imminent). Indeed, the majority's restrictive standard leaves this Circuit alone on a doctrinal spur. In all other circuits, an organization has an injury-in-fact when it asserts impairment to activities, impairment to mission, or direct misrepresentation, consistent with *Havens* and *FDA*. An organization in this Circuit, however, has an injury-in-fact only when it shows an impairment to a preexisting core business activity. The majority has thus transformed Article III's important constitutional filter into an unjustifiable dam.

Aside from its fundamentally flawed departure from *Havens* and *FDA*, the majority's opinion contains other defects. First, the majority limits organizational injuries to "preexisting activities," but that qualifier has no basis in logic or law. Consider a new organization established to provide housing for people in recovery from substance use disorders, who are protected as people with disabilities under federal law. When the organization attempts to open its inaugural sober living home in a single-family neighborhood, the municipality enacts a moratorium on

recovery housing and thwarts the project. The organization would clearly be injured—it would be unable to provide the housing it was formed to provide—but because its activities were not "preexisting," this harm would not count as an injury-in-fact. Moreover, the majority restricts injury-in-fact to "core" activities, even though no such restriction appears in *Havens* or *FDA*. *FDA* described counseling as one of HOME's core activities in *Havens*, *see FDA*, 602 U.S. at 395, but neither decision indicates that HOME's standing would have been lacking if counseling made up only a small portion of HOME's agenda or budget, or if counseling was otherwise something short of a "core" activity. The majority here does not even define "core," yet would have this modifier serve as a constitutional minimum.

All these errors flow from the erroneous assertion that the Supreme Court in *FDA* changed what is required for an organization alleging injury-in-fact. Op. at 21–23. But as explained above, *FDA* merely applied the standards of *Havens* to a factual record that was markedly devoid of any true injury. The Supreme Court's application of its own precedent is not an invitation for dramatic change, and this Court should not abide the majority's attempted renovation of Article III's injury-in-fact requirements.

### C. The Majority's Error Will Deprive Amici of Redress for Cognizable Harm.

The consequences of the majority's decision are not abstract or speculative—if left intact, the majority's heightened standard will bar Amici and their peers from the courthouse, irrespective of their actual injuries.

Amici are non-profit organizations that provide a broad array of services and serve a diverse set of clients, including individuals and community advocacy groups. Like any other person or corporation, organizations like Amici can be injured. Yet now under the panel's interpretation, many of those injuries would not qualify as an Article III injury-in-fact, and Amici are uniquely foreclosed from vindicating their rights. The wrongful exclusion of any litigant would be problematic enough on its own, but it is particularly egregious in this context, where leaving injuries unremedied translates into fewer resources and services for communities in need, like those served by Amici.

As confirmed by *Havens* and *FDA*, organizations are legal entities that can face direct harm. Organizations like Amici should retain the right to seek redress in the same way that a private for-profit corporation may sue when it suffers harm. If standing principles are artificially narrowed to exclude most kinds of harm, Amici will be forced to endure ongoing injury.

Take, for example, a fair housing organization dedicated to reducing and preventing racial segregation in Oakland, California. To achieve this mission, the

organization lobbies the City Council to ensure that its zoning regulations allow for the distribution of affordable housing throughout the city. The organization also meets with developers, realtors, and lenders to promote inclusive practices and conducts occasional audits to evaluate whether and how housing providers are contributing to segregated living patterns. The organization receives a complaint that one of the only affordably priced rental providers in a predominantly white neighborhood is steering away Black applicants, thus entrenching racial segregation. The organization investigates the allegations and confirms the steering. This discriminatory conduct directly impairs the organization's mission and purpose of preventing segregation, and thus is an injury-in-fact, even though the organization's activities may continue as before.

Under the majority's holding, this organization would not be able to seek redress for this injury in court because although the organization's mission has been impaired, the defendant's steering did not make it more difficult for the organization to carry out its preexisting activities. This discrimination would prevent the organization from achieving its mission and purpose, but the organization would have no recourse to stop the rental provider from continuing to steer Black applicants away from units in white neighborhoods.

The consequences of this outcome go beyond Amici themselves, who provide resources and services to clients and communities in need. Many of

Amici's missions and activities are dedicated to helping vulnerable populations. When Amici are injured—when they cannot achieve their missions or when they are forced to resort to self-help instead of serving their constituents—the harm is passed on to these vulnerable populations in the form of fewer resources.

There is no basis for subjecting Amici, their peers, and their constituents to such ongoing harm when binding Supreme Court caselaw indicates that it can be rectified in the courts.

## II. The Majority Wrongly Attempts to Overrule Circuit Precedent.

After improperly ratcheting up the standard for injury-in-fact, the majority purports to overrule this Circuit's "organizational standing precedents." Op. at 8. Circuit precedent is overruled only if intervening Supreme Court authority has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). That standard has not been met here, and the majority's determination is wrong three times over.

First, the majority's categorical overruling rests on a faulty premise. According to the majority, this Circuit has wrongly relied on a two-pronged test for organizational plaintiffs instead of the three-pronged test applicable to all other plaintiffs. Not so. This Circuit's precedent makes clear that it has applied the same constitutional prerequisites to organizations as it has to other litigants, looking to

*Havens* to elucidate the first prong, injury-in-fact. *See, e.g.*, *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (noting that the "same analysis" to establish "the irreducible constitutional minimum" applies to both individuals and organizations).

Second, the majority's attempt to issue a blanket decree is inapt for a question that must be determined on a case-by-case basis. *See, e.g.*, *Civil Rights Educ. and Enforcement Ctr. v. Hospitality Props. Trust*, 867 F.3d 1093, 1100 (9th Cir. 2017). A quick glance at some of this Circuit's (possibly-now-defunct) precedent confirms that not all *Havens*-based decisions reached the wrong outcome. For example, in *East Bay Sanctuary Covenant v. Biden*, the organizational plaintiffs alleged that the challenged asylum rule impaired their ability to represent people in asylum proceedings; frustrated their mission of assisting migrants seeking asylum; and jeopardized their funding, which was tied to the number asylum-seekers they served. 993 F.3d 640, 663–65 (9th Cir. 2021). The majority in that case first recited the general three-pronged test for Article III standing and then determined that the organizations had satisfied the injury-in-fact prong. *Id.* Under *Havens* and *FDA*, that determination remains correct; according to the majority's standard, this Court would have lacked jurisdiction.

Third, the majority did not even define the corpus of caselaw that it overruled. Given that the majority's rationale was itself flawed and given that some

of this Circuit's previous cases are consistent with current Supreme Court jurisprudence, plaintiffs and courts alike are left to guess which cases are now dead letter.

This Court should not bless the majority's drive-by decimation of an unenumerated list of Circuit precedents, many of which may be reconciled with *FDA*. If permitted, the majority's incorrect and overbroad unraveling of binding authority in this case will lead to confusion and inconsistency on a matter of great importance.

## CONCLUSION

For the foregoing reasons, Amici respectfully request that this Court grant en banc review and correct the errors in the majority's decision.


Respectfully submitted,


Dated: October 15, 2024
_s/Lila Miller_
Lila Miller
Reed Colfax
Tara Ramchandani
RELMAN COLFAX PLLC
1225 19th Street NW Suite 600
Washington, DC 20036
Tel: 202-728-1888
Fax: 202-728-0848
lmiller@relmanlaw.com
rcolfax@relmanlaw.com
tramchandani@relmanlaw.com
_Attorneys for Amici Curiae_

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 22-16490

I am the attorney or self-represented party.

**This brief contains** 3,089 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** *s/Lila Miller* **Date** October 15, 2024
*(use "s/[typed name]" to sign electronically-filed documents)*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the attached document with the

Clerk of Court for the United States Court of Appeals for the Ninth Circuit by

using the appellate CM/ECF system on October 15, 2024.


*s/Lila Miller*
Lila Miller
*Attorney for Amicus Curiae*