No. 22-16490

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ARIZONA ALLIANCE FOR RETIRED AMERICANS et al.,
Plaintiffs-Appellees,

*v.*

KRISTIN K. MAYES, in her official capacity as Arizona Attorney
General,
Defendant-Appellant,
*and*
YUMA COUNTY REPUBLICAN COMMITTEE,
Intervenor-Defendant-Appellant,
*and*
ADRIAN FONTES, in his official capacity as Arizona Secretary of
State, et al.,
Defendants.

On Appeal from the United States District Court
for the District of Arizona
Case No. 2:22-cv-01374-GMS

## BRIEF OF AMICI CURIAE COMMUNITY GROUPS, FAIR HOUSING AGENCIES, AND PUBLIC INTEREST ORGANIZATIONS IN SUPPORT OF PLANTIFFS-APPELLEES

Lila Miller
Reed Colfax
Tara Ramchandani
RELMAN COLFAX PLLC
1225 19th Street NW Suite 600
Washington, DC 20036
Tel: 202-728-1888
Fax: 202-728-0848
lmiller@relmanlaw.com
rcolfax@relmanlaw.com
tramchandani@relmanlaw.com
*Attorneys for Amici Curiae*

Dated: April 8, 2025

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(c), Amici Curiae Community Groups, Fair Housing Agencies, and Public Interest Organizations (collectively "Amici") state that they all are non-profit corporations; that none of Amici has any parent corporations; and that no publicly held company owns any stock in any of Amici.

<u>s/Lila Miller</u><br>
Lila Miller<br>
<i>Attorney for Amici Curiae</i>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTEREST OF AMICI CURIAE ......................................................... 1

SUMMARY OF ARGUMENT ............................................................ 3

ARGUMENT ...................................................................................... 4

   I.   The Majority's Decision Fundamentally Misapplied Binding Supreme Court Precedent. ............................................................. 4

     A.   The Supreme Court Has Identified at Least Three Forms of Organizational Injury. ................................................................. 5

     B.   The Majority's Reasoning was Based on a Misreading of *FDA* and Inappropriately Narrowed Injury-in-Fact for Organizational Plaintiffs. . 11

     C.   The Majority's Reasoning Would Deprive Amici of Redress for Cognizable Harm. .......................................................................... 13

  II.  The Majority Wrongly Attempted to Overrule Circuit Precedent. ....... 16

   CONCLUSION ................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Caicedo v. DeSantis*,
    2024 WL 4729160 (M.D. Fla. Nov. 8, 2024) ......................................................9

*Civil Rights Educ. and Enforcement Ctr. v. Hospitality Props. Trust*,
    867 F.3d 1093 (9th Cir. 2017) ............................................................17

*E. Bay Sanctuary Covenant v. Biden*,
    993 F.3d 640 (9th Cir. 2021) ..............................................................17

*Fair Hous. Ctr. of Cent. Ind. v. M&J Mgmt. Co., LLC*,
    No. 1:22-cv-00612, 2024 WL 3859997 (S.D. Ind. Aug. 19, 2024) ....................8

*Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living, LLC*,
    124 F.4th 990 (6th Cir. 2025) ........................................................7, 11

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ....................................................................*passim*

*Get Loud Ark. v. Thurston*,
    748 F. Supp. 3d 630 (W.D. Ark. 2024) ..............................................9

*Havens Realty v. Coleman*,
    455 U.S. 363 (1982) ................................................................3, 6, 7, 9

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) ..........................................................16

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ............................................................16

*Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Trust*,
    No. 1:18-cv-00839 (N.D. Ill. March 31, 2025) ....................................7

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024) ......................................................8, 15

**Statutes**

Fair Housing Act, 42 U.S.C. § 3604 ..........................................................7

# INTEREST OF AMICI CURIAE[1]

Amici include 22 Community Groups, Fair Housing Agencies, and Public Interest Organizations that are active in the states within this Circuit. Each of Amici has both a demonstrated commitment to a specific mission or purpose and a track record of undertaking mission-driven activities. Some of Amici provide direct services to individuals and families, helping them obtain access to housing and public benefits. Other of Amici work in their communities to provide housing counseling, promote homeownership, undertake neighborhood stabilization projects, and engage in education and outreach. Certain Amici have experience with the legal standards for establishing organizational standing, having served as legal counsel to organizations who have been compelled to prevent or remedy discrimination, or violation of other laws, that impairs their missions. All Amici are susceptible to harm, whether it be from private conduct that impairs their programs, from a government regulation that makes it impossible to achieve their missions, or from some other direct harm, such as a misrepresentation or loss of funding. These injuries are often concrete and particularized, and a proper

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E) and Ninth Circuit Rules 29-2 and 29-3, Amici state that all parties consented to the filing of this amici curiae brief. No party's counsel authored this brief in whole or in part, and no party, party's counsel, or person other than Amici, their members, or their counsel contributed money intended to finance the preparation or submission of this brief.

approach to the Article III injury-in-fact standing requirement is necessary to

ensure that Amici are not subject to ongoing harm without appropriate avenues for

redress. Thus, Amici have a significant interest in the outcome of this case.

Amici include:

- National Fair Housing Alliance
- ACLU of Arizona
- ACLU of Northern California
- Asian Americans Advancing Justice Southern California
- Disability Rights Advocates
- Disability Rights California
- Disability Rights Education & Defense Fund
- Fair Housing Advocates of Northern California
- Fair Housing Center of Washington
- Fair Housing Council of Orange County
- Fair Housing Council of Riverside County
- Fair Housing Napa Valley
- Housing Rights Center
- Intermountain Fair Housing Council
- Lawyers' Committee for Civil Rights of the San Francisco Bay Area
- Montana Fair Housing
- Northwest Fair Housing Alliance
- Project Sentinel
- Public Counsel
- Public Interest Law Project
- Southwest Fair Housing Council
- Western Center on Law & Poverty

## SUMMARY OF ARGUMENT

This Court should apply existing precedent and affirm the District Court's finding that the Arizona Alliance for Retired Americans, Voto Latino, and Priorities USA (collectively "Plaintiffs") have Article III standing.[2]

The majority opinion of the panel wrongly concluded that an organizational plaintiff has an injury-in-fact "*only*" when the challenged conduct "directly injures the organization's preexisting core activities and does so *apart* from the plaintiffs' response to that governmental action." Op. at 7 (emphasis in original).[3] This finding improperly narrowed organizational standing. More specifically, the majority's restrictive approach departed from *Havens Realty v. Coleman*, 455 U.S. 363 (1982), and misconstrued the Supreme Court's recent unanimous decision in *Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ("*FDA*").

If the majority's reasoning were followed, it would have severe consequences for organizations like Amici, which are vulnerable to a variety of harms at the hands of governmental action and private conduct. Unlike other

---

[2] Amici take no position regarding whether Arizona Senate Bill 1260, Ariz. H.B. Summary, 2022 Reg. Sess. S.B. 1260, violates the National Voter Registration Act, 52 U.S.C. § 20507.

[3] Citations to "Op." refer to pages 1 through 39 of the panel's majority opinion issued on September 20, 2024.

litigants, Amici would be uniquely barred from redressing concrete and particularized injuries merely because they do not fit within the cramped definition of organizational harm described in the panel's majority opinion.

The panel majority also purported to overrule all prior Circuit precedent on organizational standing, yet many of this Court's previous decisions are wholly consistent with *Havens* and *FDA* and therefore should remain good law regardless of the outcome in this particular case.

Amici submit this brief to provide an overview of the organizational injury landscape and identify the flaws in the panel majority's analysis. For the reasons set forth below, the En Banc Court should reject the panel majority's restrictive approach and instead reaffirm this Circuit's fidelity to the standard for organizational injury set forth in *Havens* and *FDA*.

## ARGUMENT

## I. The Majority's Decision Fundamentally Misapplied Binding Supreme Court Precedent.

As this Court has long held, an organization seeking to establish Article III standing must show the familiar trio of injury, causation, and redressability. *See Infra* Section III. At issue here is the first prong, namely, how the panel majority evaluated whether Plaintiffs suffered an injury-in-fact for standing purposes. The panel majority held that an organization is injured for Article III purposes *only* when a defendant's actions "directly harmed already-existing core activities." Op.

at 23. Amici agree that harm to an organization's existing activities is an injury sufficient for the first prong of the standing analysis, but it is not the sole type of organizational injury cognizable under Article III. The Supreme Court has recognized at least two other categories of injury—impairment of mission and direct misrepresentations—which the majority had summarily eliminated, along with all other potential injuries. In addition to eliminating cognizable injuries, the majority had wrongly imposed a temporal limitation—requiring that the harmed organizational activities be "preexisting"—that finds no home in the applicable Supreme Court precedent. The majority had thus improperly and artificially narrowed what organizational injuries may be redressed through the courts. The Supreme Court did not narrow or eliminate any of these injuries in *FDA*, and the majority had no basis for doing so in this case. The majority's interpretation, if adopted, would deprive Amici of recourse—and thus subject them to ongoing harm—when they face traceable and redressable injuries.

### A. The Supreme Court Has Identified at Least Three Forms of Organizational Injury.

The Supreme Court's decisions in *Havens* and *FDA* teach what kinds of organizational harm are cognizable for Article III purposes. *Havens* involved claims by HOME of Virginia, a fair housing non-profit, against a housing provider that steered Black individuals (including testers sent by the non-profit) away from an apartment complex by lying about unit availability. In affirming HOME's

standing to sue, the Supreme Court described three distinct cognizable forms of injury to the organization.

First, *Havens* held that interference with an organization's programs and services caused an injury-in-fact for Article III purposes. *Havens*, 455 U.S. at 379. Specifically, the defendant's racial steering impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers. *Id.*

Second, the Supreme Court recognized injury-in-fact in the form of "impairment" of the organization's "role of facilitating open housing." *Id*. at 379 n.21. The Court clarified that the fact "[t]hat the alleged injury results from the organization's non-economic interest in encouraging open housing does not affect the nature of the injury . . . and accordingly does not deprive the organization of standing." *Id.* at n.20. And practically speaking, this holding makes sense—during discovery, HOME could have developed evidence that the defendant's racial steering perpetuated segregation and impeded equal access to housing, both of which would have significantly interfered with the organization's mission of promoting equal housing opportunity. The Supreme Court specifically noted that HOME would need to prove at trial this injury of "impairment in its role of facilitating open housing before it [would] be entitled to judicial relief." *Id.* at n.21.

Third, the *Havens* court recognized harm to HOME from the "false information about apartment availability" that the defendant provided to the

organization's employee, noting that race-based misrepresentations regarding housing availability violate the Fair Housing Act, 42 U.S.C. § 3604. *Id.* at 373.[4]

The Supreme Court's recent decision in *FDA* did not disavow or narrow the injuries recognized in *Havens*; such injuries simply were not supported by the record in *FDA*. There, the plaintiff-organizations did not show any of the injuries articulated in *Havens*, nor any other kind of harm, and thus did not have standing. *FDA*, 602 U.S. at 394–95. The only injury asserted by the *FDA* plaintiffs, apart from "mere disagreement with [the] FDA's policies," was the cost incurred to express that disagreement. *Id.* at 394. The Supreme Court found that these expenditures alone did not confer standing. *Id.* (an organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action").

The *FDA* opinion confirmed the first basis for standing in *Havens,* that harm to an organization's activities constitutes an injury-in-fact. *Id.* at 394–95; *see also Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living, LLC*, 124 F.4th 990, 992 (6th Cir. 2025) (describing that *FDA* supports the conclusion that an organization has standing to challenge conduct that interferes with the organization's core business activities); *Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Trust*, No. 1:18-

---

[4] Although not addressed by the majority, such direct harm can presumably arise in the context of other kinds of claims, such as reputational damage in a defamation case or restraint on speech in a First Amendment case.

cv-00839 (N.D. Ill. March 31, 2025) (finding standing where organizational plaintiffs offered specific examples of how at least one core business activity had been impaired by defendants' conduct). Notably, *FDA* did not hold or even suggest that the harm to mission-related activities applies to only "pre-existing activities" as the majority panel suggested. *FDA*, 602 U.S. at 394–95.

As to the second form of *Havens* injury, impairment-of-mission, the *FDA* opinion did not cite, analyze, or otherwise disturb it, and subsequent circuit decisions have confirmed this remains an independently cognizable injury-in-fact. Indeed, the Fourth Circuit recently considered standing in the context of allegations that a defendant impaired the plaintiff organization's core missions and confirmed the viability of this *Havens*-based theory of standing after *FDA*. The Fourth Circuit found standing under *Havens* and *FDA* where the plaintiff organizations alleged that the "'Defendants' actions and inaction directly impact Plaintiffs' core organizational missions of election security and providing services aimed at promoting Republican voter engagement and electing Republican candidates for office.'" *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 396–97 (4th Cir. 2024). Several District Courts have recently reached similar conclusions. *See, e.g.*, *Fair Hous. Ctr. of Cent. Ind. v. M&J Mgmt. Co., LLC*, No. 1:22-cv-00612, 2024 WL 3859997, at *3 (S.D. Ind. Aug. 19, 2024), (concluding previous ruling that "[a] fair housing organization may also suffer

redressable injury to its non-economic interest in encouraging open housing, or frustration of mission" remains good law under *FDA*); *Get Loud Ark. v. Thurston*, 748 F. Supp. 3d 630, 653 (W.D. Ark. 2024) (finding standing where challenged rule "perceptibly impaired" organization's mission of providing voter registration services to Arkansas residents); *Caicedo v. DeSantis*, 2024 WL 4729160, at *5 (M.D. Fla. Nov. 8, 2024) (finding standing where defendant's removal of voters from the rolls "caused many voters . . . to feel as if their votes did not matter," which harmed plaintiff's mission of encouraging members of marginalized communities to engage in politics).

Undoubtedly, *Havens* articulated, and *FDA* confirmed, that the impairment-of-mission basis for organizational standing is not without limitation. A mere "setback to the organization's abstract social interests" is insufficient to confer standing. *Havens*, 455 U.S. at 379. However, harm to the organization's "interest in encouraging open housing" or "impairment in its role of facilitating open housing" were and continue to be concrete and actionable injuries, not abstract setbacks. *Id.* at 379, n.20, 21. In practical terms, the distinction between an organizations' abstract interest and its core mission could mean that a local civil rights organization generally dedicated to ensuring equality of rights for Black people that does not play any role with housing issues in its region may not have standing to challenge a real estate agency steering Black homeseekers away from

white neighborhoods even though the organization is philosophically opposed to segregation. That type of amorphous objection is precisely what deprived the organizations of standing in *FDA*. There, the medical associations may have had an abstract opposition to abortions but did not show or allege how their actual missions—"support[ing] women's health and educat[ing] the public, their members, and their members' patients about the potential risks of abortion drugs," Brief of Respondents-Appellees at 43, *FDA*, Nos. 23-235, 23-236 (Feb. 22, 2024)—were impaired by the relaxing of certain regulatory requirements for an abortion drug.

The medical associations in *FDA* may have been injured if the FDA had impermissibly withheld data from the medical associations and thereby prevented them from conducting the studies that animated their mission of educating the public regarding potential risks of abortion drugs. Or in the local civil rights organization example, if the group's mission included efforts to ensure integrated or open housing, like the plaintiff in *Havens*, it would have standing to challenge racial steering that concretely and demonstrably impairs that mission. In either scenario, under *Havens* and *FDA* the impairment of an organization's mission is sufficient injury for the Article III injury-in-fact analysis.

*FDA* also expressly declined to address direct harm like the misrepresentations at issue in *Havens* because the medical associations neither

argued that they suffered discriminatory misrepresentations nor suggested that the FDA was required to disseminate specific information to them or their members. *FDA*, 602 U.S. at 395–96; *see also Singh Senior Living*, 124 F.4th at 993 (allowing organizational plaintiff to develop record on remand regarding alleged informational injury). Accordingly, this remains another form of actionable harm.

*  *  *

Neither *Havens* nor *FDA* contains any language that can be read to cap the universe of potential organizational injuries. Rather, *Havens* and *FDA* together instruct that there exist at least three kinds of organizational injury that can support standing, but abstract disagreement and bare expenditures to oppose the challenged conduct alone are not among them.

**B.     The Majority's Reasoning was Based on a Misreading of *FDA* and Inappropriately Narrowed Injury-in-Fact for Organizational Plaintiffs.**

Despite the above-described binding precedent, the panel majority wrongly held that an organization does not have an Article III injury-in-fact unless the challenged conduct "directly harms its *already-existing* core activities." Op. at 23 (emphasis in original). This narrow articulation eliminates *all* other potential injuries, including those already recognized by the Supreme Court in *Havens*. Now, an organization that pleads mission impairment or direct harm will not have standing absent allegations of injury to its ongoing core activities.

11

The majority thus attempted to create a heightened standard for organizational plaintiffs, both compared to the Supreme Court (where *Havens* and *FDA* control) and compared to other kinds of litigants (who can seek redress for *any* injury so long as it is concrete, particularized, and actual or imminent). Indeed, the majority's suggested restrictive standard leaves this Circuit alone on a doctrinal spur. In all other circuits, an organization has an injury-in-fact when it asserts impairment to activities, impairment to mission, or direct misrepresentation, consistent with *Havens* and *FDA*. An organization in this Circuit, however, has an injury-in-fact only when it shows an impairment to a preexisting core business activity. The majority had thus transformed Article III's important constitutional filter into an unjustifiable dam.

Aside from its fundamentally flawed departure from *Havens* and *FDA*, the majority's opinion contained other defects. First, the majority limited organizational injuries to "preexisting activities," but that qualifier has no basis in logic or law. Consider a new organization established to provide housing for people in recovery from substance use disorders, who are protected as people with disabilities under federal law. When the organization attempts to open its inaugural sober living home in a single-family neighborhood, the municipality enacts a moratorium on recovery housing and thwarts the project. The organization would clearly be injured—it would be unable to provide the housing it was formed to

provide—but because its activities were not "preexisting," this harm would not count as an injury-in-fact. Moreover, the majority restricted injury-in-fact to "core" activities, even though no such restriction appears in *Havens* or *FDA*. *FDA* described counseling as one of HOME's core activities in *Havens*, *see FDA*, 602 U.S. at 395, but neither decision indicates that HOME's standing would have been lacking if counseling made up only a small portion of HOME's agenda or budget, or if counseling was otherwise something short of a "core" activity. The majority here did not even define "core," yet would have this modifier serve as a constitutional minimum.

All these errors flow from the erroneous assertion that the Supreme Court in *FDA* changed what is required for an organization alleging injury-in-fact. Op. at 21–23. But as explained above, *FDA* merely applied the standards of *Havens* to a factual record that was markedly devoid of any true injury. The Supreme Court's application of its own precedent is not an invitation for dramatic change, and this Court should confirm the contours of Article III's injury-in-fact requirements for organizations as described by *Havens*.

### C. The Majority's Reasoning Would Deprive Amici of Redress for Cognizable Harm.

The consequences of the majority's unjustified approach to organizational standing would not have been abstract or speculative—the majority's suggestion of

a heightened standard would bar Amici and their peers from the courthouse, irrespective of their actual injuries.

Amici are non-profit organizations that provide a broad array of services and serve a diverse set of clients, including individuals and community advocacy groups. Like any other person or corporation, organizations like Amici can be injured. Yet now under the panel's interpretation, many of those injuries would not qualify as an Article III injury-in-fact, and Amici are uniquely foreclosed from vindicating their rights. The wrongful exclusion of any litigant would be problematic enough on its own, but it is particularly egregious in this context, where leaving injuries unremedied translates into fewer resources and services for communities in need, like those served by Amici.

As confirmed by *Havens* and *FDA*, organizations are legal entities that can face direct harm. Organizations like Amici should retain the right to seek redress in the same way that a private for-profit corporation may sue when it suffers harm. If standing principles are artificially narrowed to exclude most kinds of harm, Amici will be forced to endure ongoing injury.

Take, for example, a fair housing organization dedicated to reducing and preventing racial segregation in Oakland, California. To achieve this mission, the organization advocates to the city council for zoning regulations that allow for the distribution of affordable housing throughout the city. The organization also meets

with developers, realtors, and lenders to promote inclusive practices and conducts occasional audits to evaluate whether and how housing providers are contributing to segregated living patterns. *See, e.g.*, *Republican Nat'l Comm.*, 120 F.4th at 396–97. The organization receives a complaint that one of the only affordably priced rental providers in a predominantly white neighborhood is steering away Black applicants, thus entrenching racial segregation. The organization investigates the allegations and confirms the steering. This discriminatory conduct directly impairs the organization's mission and purpose of preventing segregation, and thus is an injury-in-fact, even though the organization's activities may continue as before.

Under the majority's reasoning, this organization would not be able to seek redress for this injury in court because although the organization's mission has been impaired, the defendant's steering did not make it more difficult for the organization to carry out its preexisting activities. This discrimination would prevent the organization from achieving its mission and purpose, but the organization would have no recourse to stop the rental provider from continuing to steer Black applicants away from units in white neighborhoods.

The consequences of this outcome go beyond Amici themselves, who provide resources and services to clients and communities in need. Many of Amici's missions and activities are dedicated to helping vulnerable populations. When Amici are injured—when they cannot achieve their missions or when they

are forced to resort to self-help instead of serving their constituents—the harm is passed on to these vulnerable populations in the form of fewer resources.

There is no basis for subjecting Amici, their peers, and their constituents to such ongoing harm when binding Supreme Court caselaw indicates that it can be rectified in the courts.

## II.    The Majority Wrongly Attempted to Overrule Circuit Precedent.

After proposing an improperly ratcheted-up standard for injury-in-fact, the majority purported to overrule this Circuit's "organizational standing precedents." Op. at 8. Circuit precedent is overruled only if intervening Supreme Court authority has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Because Circuit precedent is compatible with *FDA*, that standard has not been met here, and the majority's discussion of the issue was wrong three times over.

First, the majority's attempted categorical overruling rested on a faulty premise. According to the majority, this Circuit has wrongly relied on a two-pronged test for organizational plaintiffs instead of the three-pronged test applicable to all other plaintiffs. Not so. This Circuit's precedent makes clear that it has applied the same constitutional prerequisites to organizations as it has to other litigants, looking to *Havens* to elucidate the first prong, injury-in-fact. *See, e.g., La*

*Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (noting that the "same analysis" to establish "the irreducible constitutional minimum" applies to both individuals and organizations).

Second, the majority's issuance of a blanket decree was inapt for a question that must be determined on a case-by-case basis. *See, e.g.*, *Civil Rights Educ. and Enforcement Ctr. v. Hospitality Props. Trust*, 867 F.3d 1093, 1100 (9th Cir. 2017). A quick glance at some of this Circuit's precedent confirms that not all *Havens*-based decisions reached the wrong outcome. For example, in *East Bay Sanctuary Covenant v. Biden*, the organizational plaintiffs alleged that the challenged asylum rule impaired their ability to represent people in asylum proceedings; frustrated their mission of assisting migrants seeking asylum; and jeopardized their funding, which was tied to the number of asylum-seekers they served. 993 F.3d 640, 663–65 (9th Cir. 2021). The majority in that case first recited the general three-pronged test for Article III standing and then determined that the organizations had satisfied the injury-in-fact prong. *Id.* Under *Havens* and *FDA*, that determination remains correct; according to the majority's reasoning, this Court would have lacked jurisdiction.

Third, the majority did not even define the corpus of caselaw that it thought would have been overruled. Given that the majority's rationale was itself flawed, and given that some of this Circuit's previous cases are consistent with current

Supreme Court jurisprudence, plaintiffs and courts alike would have been left to guess which cases would be dead letter.

This Court should not reincarnate the majority's drive-by decimation of Circuit precedents, many of which may be reconciled with *FDA*. The majority's incorrect and overbroad unraveling of binding authority would only lead to confusion and inconsistency on a matter of great importance.

## CONCLUSION

For the foregoing reasons, Amici respectfully request that this Court affirm the District Court's finding that the organizational plaintiffs have standing to pursue their claims.

Respectfully submitted,

Dated: April 8, 2025

*s/Lila Miller*
Lila Miller
Reed Colfax
Tara Ramchandani
RELMAN COLFAX PLLC
1225 19th Street NW Suite 600
Washington, DC 20036
Tel: 202-728-1888
Fax: 202-728-0848
lmiller@relmanlaw.com
rcolfax@relmanlaw.com
tramchandani@relmanlaw.com
*Attorneys for Amici Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 22-16490 _____

I am the attorney or self-represented party.

**This brief contains** 3,854 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f).

The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** *s/Lila Miller* _____ **Date** April 8, 2025 _____
*(use "s/[typed name]" to sign electronically-filed documents)*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the attached document with the

Clerk of Court for the United States Court of Appeals for the Ninth Circuit by

using the appellate CM/ECF system on April 8, 2025.


<u>*s/Lila Miller*</u>
Lila Miller
*Attorney for Amicus Curiae*